No. 14,794.

TRUJILLO ET AL *v.* CITY OF WALSENBURG.
(118 P. [2d] 1081)

Decided November 3, 1941.

Mr. SAMUEL D. MENIN, for plaintiffs in error.

Mr. FRED K. PARRIOTT, for defendant in error.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

ROBERT TRUJILLO, Toney Trujillo and Maurico Romero, plaintiffs in error, to whom we hereinafter refer as defendants, were charged in separate complaints with the violation of ordinance No. 273 of the City of Walsenburg, in that they "did unlawfully use the streets of the City of Walsenburg by using said streets for the purpose of parading and organizing a procession without securing a permit from the chief of police of said city as provided by said ordinance." The pertinent language of the ordinance, upon which these charges are based, is as follows: "Section 1. That it shall be unlawful for any person or persons or association to use the streets of the City of Walsenburg, Colorado, for any parade, processions or street assemblage without first obtaining a permit from the Chief of Police of the City of Walsenburg so to do."

Defendants, upon trial to the court, were found guilty of violating the ordinance in question and fined, the fines being suspended upon payment of costs, judgment

for which was entered against them. Since there was no record of the testimony taken at the trial, counsel for both sides entered into a written stipulation setting forth the facts, which, briefly, are as follows:

Defendants and others, after being refused a permit, paraded and assembled, without a permit, on the sidewalks of Walsenburg February 21, 1940, about sixty persons participating in the procession, walking three abreast, and some were carrying signs. There was no violence and at the time of the arrest defendants and the others dispersed peaceably; defendants admitted on the trial that they had violated the terms of the ordinance, but, asserting its unconstitutionality, they offered no testimony; the evidence disclosed that at different times in the past parades and assemblages were held in the City of Walsenburg by other organizations, permits therefor having been issued by the proper authority; that defendants are members of an organization known as the Workers' Alliance.

Defendants contend that the ordinance in question is invalid, in that it violates the following provisions of section 1 of the Fourteenth Amendment to the Constitution of the United States, which provides that: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The specific point of unconstitutionality asserted is that the ordinance is void on its face, because under its provisions the chief of police of the city may arbitrarily grant or refuse a permit for any parade, procession or street assemblage. No standards of official action are set up in the ordinance under which the designated official, without discrimination, may grant permits. His authority to grant permits—which is not expressly conferred by the ordinance—depends primar-

ily upon his personal opinion or desire, uncircumscribed by any legislative standard of control.

■■ The power of municipalities, under our state law, to regulate the use of public streets is conceded. '35 C.S.A., chapter 163, section 10, subparagraph 7. "The privilege of a citizen of the United States to use the streets * * * may be regulated in the interest of all; is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied." *Hague, Mayor v. Committee for Industrial Organization,* 307 U.S. 496, 516, 59 Sup. Ct. 954, 83 L. Ed. 1423.

An excellent statement of the power of a municipality to impose regulations in the use of public streets is found in the recent case of *Cox v. New Hampshire* (312 U.S. 569, 61 Sup. Ct. 762, 85 Law Ed., p. 1049), in which the following appears: "The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection. One would not be justified in ignoring the familiar red traffic light because he thought it his religious duty to disobey the municipal command or sought by that means to direct public attention to an announcement of his opinions. As regulation of the use of the streets for parades and processions is a traditional exercise of control by local government, the question in a particular case is whether that control is exerted so as not to deny

or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places. *Lovell v. Griffin,* 303 U.S. 444, 451, 82 L. Ed. 949, 953, 58 Sup. Ct. 666; *Hague v. Committee for Industrial Organization,* 307 U.S. 496, 515, 516, 83 L. Ed. 1423, 1436, 1437, 59 Sup. Ct. 954; *Schneider v. Irvington,* 308 U.S. 147, 160, 84 L. Ed. 155, 164, 60 Sup. Ct. 146; *Cantwell v. Connecticut,* 310 U.S. 296, 306, 307, 84 L. Ed. 1213, 1219, 1220, 60 Sup. Ct. 900, 128 A.L.R. 1352."

Our concern here is the validity or non-validity of an ordinance which leaves to the uncontrolled official discretion of the chief of police of a municipal corporation to say who shall, and who shall not, be accorded the privilege of parading on its public streets. No standard of regulation is even remotely suggested. Moreover, under the ordinance as drawn, the chief of police may for any reason which he may entertain arbitrarily deny this privilege to any group. This is authorization of the exercise of arbitrary power by a governmental agency which violates the Fourteenth Amendment. *People v. Harris,* 104 Colo. 386, 394, 91 P. (2d) 989. Such an ordinance is unreasonable and void on its face. *City of Chicago v. Trotter,* 136 Ill. 430, 26 N.E. 359. See, also, *Anderson v. City of Wellington,* 40 Kan. 173, 19 Pac. 719; *State ex rel. v. Dering,* 84 Wis. 585, 54 N.W. 1104; *Anderson v. Tedford,* 80 Fla. 376, 85 So. 673; *State v. Coleman,* 96 Conn. 190, 113, Atl. 385, 387; 43 C.J., p. 419, §549; 44 C.J., p. 1036, §3885. In the case of *Hague, Mayor v. Committee for Industrial Organization, supra,* the Supreme Court of the United States had before it the question of whether an ordinance authorizing the director of public safety of a city to refuse to issue a permit for the use of the public streets, "for the purpose of preventing riots, disturbances or disorderly assemblage," was unconstitutional on its face and therefore void. Mr. Justice Roberts, in an opinion which he de-

livered in the case, stated his views in the following language (pp. 515, 516):

"Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.

"We think the court below was right in holding the ordinance quoted in Note 1 void upon its face. It does not make comfort or convenience in the use of streets or parks the standard of official action. It enables the Director of Safety to refuse a permit on his mere opinion that such refusal will prevent 'riots, disturbances or disorderly assemblage.' It can thus, as the record discloses, be made the instrument of arbitrary suppression of free expression of views on national affairs, for the prohibition of all speaking will undoubtedly 'prevent' such eventualities. But uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right."

The court held the ordinance involved to be unconstitutional and void, notwithstanding the previous action of the Supreme Court of the state of New Jersey in *Thomas v. Casey,* 121 N.J.L. 185, 1 Atl. (2d) 866, in which it held the same ordinance to be valid, stating in its opinion that the issuance of the permit rested in the

sound discretion of the director of safety, a municipal officer.

In the instant case the uncontrolled official suppression of the privilege of using the public streets in a lawful manner clearly is apparent from the face of the ordinance before us, and we therefore hold it null and void.

Nothing we have here said is to be construed as holding that a municipality may not properly regulate the use of its streets within constitutional limitations. Such was the holding in the Cox v. New Hampshire case. There the construction placed upon the statutory regulation under consideration, as stated by the New Hampshire court, and quoted by the United States court, was, that, "The defendants had a right, under the act, to a license to march when, where and as they did, if after a required investigation it was found that the convenience of the public in the use of the streets would not thereby be unduly disturbed, upon such conditions or changes in time, place and manner as would avoid disturbance." The ordinance before us does not permit of such a construction. Moreover, we here are not concerned with state statutes or municipal ordinances which, under the police power, expressly declare unlawful the use of streets under certain circumstances, without violating our traditional civil liberties. Liberty does not extend to actions, all or a part of which consist of processions on public streets by unauthorized military or semimilitary units, whose conduct is evidence of a clear and present danger to the existence of our democratic institutions, or the purpose of which is to subvert the constitutionally established procedures for the succession of power within the state.

The judgment is reversed and the case remanded with directions to dismiss the complaints.

MR. CHIEF JUSTICE FRANCIS E. BOUCK not participating.